UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PAUL SHIRLEY, JR.,

        Plaintiff,

    v.                                                  Case No. C-1-01-603

ROUGH BROS., INC.,

        Defendant.

## ORDER

This matter is before the Court upon defendant's motion for summary judgment (doc. 12), plaintiff's opposing memorandum (doc. 14), defendant's reply brief (doc. 15), and plaintiff's highlighted copy of defendant's proposed findings of fact and conclusions of law (doc. 19).

### I. Procedural history

Plaintiff Paul Shirley brings this action against his former employer, Rough Bros., Inc., claiming age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and slander and intentional infliction of emotional distress in violation of Ohio common law.

### II. Motion for summary judgment

Defendant moves for summary judgment on all claims against it. Defendant contends that plaintiff has failed to establish a prima facie case of age discrimination because he has not shown

1

that (1) he was qualified for his position or (2) he was replaced by a younger individual. Defendant argues that even if plaintiff has satisfied his prima facie case, defendant has articulated a legitimate, nondiscriminatory reason for plaintiff's termination, i.e., plaintiff violated a direct order and company policy by failing to report to work and to call in to report his absence on December 22, 2000, and plaintiff has not produced evidence of pretext.

Defendant further avers that it is entitled to summary judgment on plaintiff's slander claim, which is based on information which defendant provided to a prospective employer, because O.R.C. § 4113.71(B) grants immunity to employers who provide reference information. In addition, defendant claims that there is no evidence that its employee knowingly provided false information with malice. Defendant argues that it is entitled to summary judgment on plaintiff's claim for intentional infliction of emotional distress because the conduct alleged is not extreme and outrageous and plaintiff has not suffered a severe and debilitating injury.

In response, plaintiff refers the Court to his deposition in support of his contention that defendant treated younger employees more favorably than older workers, terminated older workers for conduct regularly tolerated in younger ones, and on one occasion turned plaintiff's wife and other older workers down for a promotion which was given to a less qualified employee. Plaintiff offers an excuse for his failure to report to work or to call in his absence on December 22, 2000, alleging that his wife had slipped and hit her head on ice as they were leaving for work and plaintiff had to remain at her side throughout the day as she drifted in and out of consciousness. Plaintiff alleges that he was replaced by two younger employees, Don Saylor and Nick Bowling. Plaintiff contends that his subsequent failure to obtain a new job is due to defendant's slanderous statement to a prospective employer that plaintiff was "ineligible for

rehire". Plaintiff also alleges that he has produced sufficient evidence to support his intentional infliction of emotional distress claim.

### III. Undisputed facts

1.  Plaintiff Paul Shirley was employed by Rough Brothers as a steel shop foreman.
2.  Defendant's employee handbook, which plaintiff received from defendant, contained policies addressing employee absenteeism and the use of employee personal days. According to the attendance policy, employees who were going to be absent were required to notify their supervisor of their absence at least one hour prior to the employee's starting time. The handbook further states that failure to comply with this notification requirement may be grounds for discharge.
3.  The handbook also states that requests for personal time off require prior approval by the employee's supervisor.
4.  December 2000 was a very busy time for Rough Brothers. There was a backlog of work in the steel shop at this time and many customer demands that needed to be met.
5.  On December 21, 2000, plaintiff requested to take time off from work on December 22, 2000.
6.  On the evening of December 21, 2000, Richard Reilly, the Vice President of Operations for Rough Brothers and the highest ranking production official at the company, informed plaintiff that he could not allow him to be off work on December 22 because there was a backlog of work in the steel shop. December 22 was the last work day before the plant closed for the Christmas holiday. The plant was closed from December 23 through December 26, with production resuming on December 27. After further discussion with

      plaintiff regarding whether plaintiff could take off work on December 22, Reilly informed plaintiff that he would be terminated if he did not report for work on December 22. Plaintiff understood that he would be terminated if he did not report to work and told Reilly that he would be at work that day.

7. Plaintiff did not report for work as ordered on December 22, 2000.

8. Plaintiff did not call in to report his absence from work on December 22, 2000.

9. When plaintiff returned to work on December 27, 2000, Reilly terminated plaintiff's employment.

10. Plaintiff filed a charge of age discrimination with the EEOC on April 3, 2001.

11. In approximately June 2001, plaintiff applied for a position with QPC, Inc. Kevin Ireland, Office Manager of QPC, contacted Rough Brothers in June 2001 to request employment information for plaintiff.

12. Plaintiff was not hired by QPC.

### IV. Applicable law

### A. Age discrimination

      Under the ADEA, 29 U.S.C. § 623(a), an employer is prohibited from discharging older employees on the basis of their age. Under the law of this Circuit, the same evidentiary framework applies to discrimination claims brought under Title VII and the ADEA. ***Allen v. Ethicon, Inc.,*** 919 F. Supp. 1093, 1098 (S.D. Ohio 1996)(Weber, J.)(citing ***Mitchell v. Toledo Hospital,*** 964 F.2d 577, 582 (6th Cir. 1992)). In order to establish an employment discrimination claim, plaintiff must introduce direct evidence of discrimination or prove inferential and circumstantial evidence which would support an inference of discrimination. ***Kline v. TVA,*** 128

F.3d 337, 348 (6th Cir. 1997). Plaintiff need only prove direct or circumstantial evidence, not both. *Id.* at 348-49.

If plaintiff presents direct evidence of discrimination, the *McDonnell-Burdine* paradigm is of no consequence. *Kline,* 128 F.3d at 349. If direct evidence of discrimination is lacking, plaintiff must prove a prima facie case of discrimination. In order to establish a prima facie case of discrimination, the plaintiff must show:

> 1) that he is a member of a protected group, 2) that he was subject to an adverse employment decision, 3) that he was qualified for the position, and 4) that he was replaced by a person outside of the protected class.

*Kline,* 128 F.3d at 349 (citing *Mitchell,* 964 F.2d at 582). In the case of age discrimination, plaintiff can establish the fourth prong of his prima facie case by showing that he was replaced by a substantially younger individual, even if that individual is within the protected class. *O'Connor v. Consolidated Coin Caterers Corporation,* 517 U.S. 308, 313 (1996); see also *Manzer v. Diamond Shamrock Chemicals Company,* 29 F.3d 1078, 1081 (6th Cir. 1994).

Plaintiff may also establish the fourth prong of a prima facie case by showing that he was treated less favorably than a similarly situated employee outside of his protected class. *Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002) In such a case, plaintiff must prove that all relevant aspects of his employment situation were similar to those of the employee with whom he seeks to compare himself. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances which would distinguish their conduct or the employer's treatment of them for that conduct. *Id.* at 352

(quoting *Mitchell,* 964 F.2d at 583); ***Smith v. Leggett Wire Co.,*** 220 F.3d 752, 762 (6th Cir. 2000). Precise equivalence in culpability between employees is not required. ***Smith,*** 220 F.3d at 762 (citing ***Harrison v. Metropolitan Government,*** 80 F.3d 1107, 1115 (6th Cir. 1996)). An employer's more severe treatment of more egregious circumstances cannot give rise to an inference of discrimination sufficient to support a prima facie case. ***Clayton,*** 281 F.3d at 612.

In determining whether a plaintiff is qualified for his position, the Sixth Circuit has cautioned that, "when assessing whether a plaintiff has met his employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." ***Wexler v. White's Furniture***, 317 F.3d 564, 574-75 (6th Cir. 2003)(citing ***Cline v. Catholic Diocese of Toledo,*** 206 F.3d 651, 660-61 (6th Cir. 2000)). A court should focus on the plaintiff's objective qualifications. *Id.* at 575. "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Id.* The focus should be on criteria such as the plaintiff's education, experience in the relevant field, and demonstrated possession of the necessary general skills. *Id.*

The Sixth Circuit has determined that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." ***Godfredson v. Hess & Clark, Inc.***, 173 F.3d 365, 372 (6th Cir. 1999)(citing ***Barnes v. GenCorp Inc.***, 896 F.2d 1457, 1465 (6th Cir.1990). A plaintiff is replaced only when another employee is hired or reassigned to perform the plaintiff's duties. *Id.;* see also ***Jackson v. City of Columbus***, 194 F.3d

737, 752 (6th Cir. 1999)(an employee is not replaced when his duties are redistributed among the remaining employees.)

If plaintiff establishes his prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). If the defendant carries this burden, the plaintiff must prove that the proffered reason is pretextual. *Id.* The plaintiff can establish pretext by a direct showing that a discriminatory reason more likely motivated the employer or by indirectly showing that the employer's reason is not credible. *Kline,* 128 F.3d at 342-43. Under appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000).

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to warrant a discharge. *Manzer,* 29 F.3d at 1084. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* The first and third showing permit, but do not require, the factfinder to infer illegal discrimination from the

plaintiff's prima facie case. *Id.*

For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.* Plaintiff must therefore come forward with circumstantial evidence of discrimination which makes it "'more likely than not' that the employer's explanation is a pretext, or coverup." *Id.*

The United States Court of Appeals for the Sixth Circuit has cautioned that, "The soundness of an employer's business judgment . . . may not be questioned as a means of showing pretext." **Brocklehurst v. PPG Industries, Inc.,** 123 F.3d 890, 898 (6th Cir. 1997). In its recent decision in **Wexler v. White's Furniture**, the Sixth Circuit made clear that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." 317 F.3d 564, 576 (6th Cir. 2003)(citing **Smith v. Chrysler Corp.,** 155 F.3d 799, 807 (6th Cir. 1998)(in evaluating the defendant's proffered nondiscriminatory reason, the court should inquire into "whether the employer made a reasonably informed and considered decision before taking an adverse employment action") and **In re Lewis,** 845 F.2d 624, 633 (6th Cir. 1988)(plaintiff could establish pretext by showing that the asserted business judgment "was so ridden with error that defendant could not honestly have relied upon it."))

Age-related comments may create a genuine issue of material fact as to whether an employer held stereotypical beliefs about the capabilities of older employees which influenced the

8

employer's adverse employment decision. See *Wexler,* 317 F.3d at 572. The Sixth Circuit has stated that in determining whether statements show employer bias, the pertinent considerations are whether the comments were made by a decision maker or by an agent within the scope of his employment; whether the comments were related to the decision making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the adverse employment action. *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330 (6th Cir. 1994). In *Wexler,* the Court determined that the age-related comments alleged there raised an issue as to whether employer bias affected the adverse employment decision in that they were made by a decision maker, they indicated a belief that a person's capabilities for the plaintiff's job position diminish with age, and several of the comments were directed at the plaintiff at the very time he was being demoted. 317 F.3d at 572.

### B. Ohio law

Slander is a form of defamation and generally refers to spoken defamatory words. *Matikas v. Univ. of Dayton,* 152 Ohio App.3d 514, 523, 788 N.E.2d 1108, 1114-1115 (2003). Defamation is defined as "a false publication causing injury to a person's reputation, or exposing the person to public hatred, contempt, ridicule, shame or disgrace or affecting him adversely in his trade or business." *Id.* (citing *Matalka v. Lagemann*, 21 Ohio App.3d 134, 136, 486 N.E.2d 1220 (1985)). The essential elements of a slander claim are that the defendant made a false statement of fact, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured, and that the defendant acted with the required degree of fault. *Id.* (citing *Celebrezze v. Dayton Newspapers, Inc*., 41 Ohio App.3d 343, 346-347, 535 N.E.2d 755 (1988)).

O.R.C. § 4113.71 grants qualified immunity to employers who provide job reference

information to other employers unless certain exceptions apply. The statute provides, in pertinent part, as follows:

> (B) An employer who is requested by an employee or a prospective employer of an employee to disclose to a prospective employer of that employee information pertaining to the job performance of that employee for the employer and who discloses the requested information to the prospective employer is not liable in damages in a civil action to that employee, the prospective employer, or any other person for any harm sustained as a proximate result of making the disclosure of any information disclosed, unless the plaintiff in a civil action establishes, either or both of the following:
>
> (1) By a preponderance of the evidence that the employer disclosed particular information with the knowledge that it was false, with the deliberate intent to mislead the prospective employer or another person, in bad faith, or with malicious purpose;

(2) By a preponderance of the evidence that the disclosure of particular information by the employer constitutes an unlawful discriminatory practice described in section 4112.02, 4112.021, or 4112.022 of the Revised Code.

Ohio recognizes intentional infliction of emotional distress as a tort. *Yeager v. Local Union 20, Teamsters, Chauffers, Warehousemen & Helpers*, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983). The elements of a claim for intentional infliction of emotional distress are: "1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go 'beyond all possible bounds of decency' and was such that it can be considered as 'utterly intolerable in a civilized community,' . . . 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'"*Pyle v. Pyle*, 11 Ohio App.3d 31, 34, 463 N.E.2d 98, 103 (1983).

### V. Opinion

### A. Age discrimination claim

The Court finds that plaintiff has failed to present evidence which raises a genuine issue of material fact as to whether defendant terminated his employment because of his age. First, plaintiff has failed to produce sufficient evidence to establish a prima facie case. Plaintiff alleges that he was replaced by two younger individuals, Don Saylor, who was in his 30's, and Nick Bowling, who was around age 40. In support of his allegation, plaintiff submits the affidavit of Jeff Whitworth, who states that he was employed by defendant until July 2001, that he worked under plaintiff's supervision, and that plaintiff was replaced by Saylor and Bowling (doc. 14, exh. A). The record discloses, however, that Saylor and Bowling were employed by defendant as

foremen during the period of plaintiff's employment. (Plaintiff's depo., pp. 144-145). There is no indication in the record that these individuals were reassigned to plaintiff's job as opposed to assuming plaintiff's duties in addition to their existing duties after plaintiff was fired. Accordingly, the evidence does not support a finding that plaintiff was replaced by a younger individual. Plaintiff must therefore produce some other evidence of age discrimination in order to establish the fourth prong of his prima facie case.

In an attempt to establish this prong of his prima facie case, plaintiff alleges that he has presented evidence that under Richard Reilly, who gradually took over management of the company from his father Al Reilly in the late 1990's, a widespread practice of favoritism toward younger workers in job placement and promotion developed. Plaintiff alleges that he sought to bring this practice to the attention of Al Reilly. Plaintiff describes this pattern of practice of age discrimination as follows:

> Plaintiff observed that 'younger foremen had a free hand', but that older ones were 'under a microscope'. Younger men, such as Nick Bowling and Don Saylor could control their own schedules and 'come and go as they pleased.' Saylor, in his 30's, had a drinking problem and caused trouble at work, yet his problems were overlooked. Yet, by contrast, older workers, such as Plaintiff's wife, were passed over for promotion in favor of younger employees. In fact, Richard Reilly told Plaintiff that a younger employee, which she had trained for a promotion position she was already physically performing, would receive the promotion because his wife was a 'fragile old lady'. Another, and better qualified, older worker was also passed over in favor of the younger worker. When new job openings became available, younger men got the first chance at them. Plaintiff had no alternative but to tell the men under him who complained, that 'it's none of your business' [why they got first chance]. (Plaintiff depo. Pg. 144, 145, 148-150)
> The discriminatory attitude was so bad that, in Fall of 2000, Plaintiff brought it up in a 'peer review' of Richard Reilly, which Plaintiff went over with Richard's father, Al Reilly. Al Reilly told Plaintiff that the situation 'will be looked into.' (Plaintiff depo. pp. 146, 147, 161-164).

See doc. 14, pp. 4-5.

At his deposition, plaintiff testified that it "seemed like all of the younger foremen were getting to do just about anything they wanted to, when all of the older foremen were under the microscope, so to speak." (Plaintiff's depo, p. 144). As an example, plaintiff testified that Bowling could come in any time that he wanted to on Saturday while plaintiff had a set starting and quitting time (depo. p. 145) and that the younger foremen in general could come and go when they wanted. (Depo. p. 146). Plaintiff testified that Saylor had a drinking problem that was overlooked for a long time and that he "would cause trouble with people, then leave", but plaintiff does not know whether Saylor was ever disciplined. (Depo., p. 148). Plaintiff testified that whenever work projects or jobs would come up, the younger foremen always got the chance to perform the job before the older ones were even spoken to. (Depo., pp. 149-150). Plaintiff also testified that on one occasion, he and the other steel shop foreman were denied an opportunity to listen to an orientation that a "tech rep" was presenting on a new piece of machinery while the younger foremen were permitted to listen to the orientation. (Depo., pp. 150-155). Plaintiff also testified that in 1998 or 1999, his wife was denied a promotion in the fabric shop because, according to Richard Reilly, she was a "fragile, old lady." (Depo. p. 161).

The Court finds that plaintiff's testimony is insufficient to establish the fourth prong of his prima facie case. Plaintiff has not shown that similarly-situated individuals who committed infractions comparable in seriousness to plaintiff's infraction were treated more favorably. Bowling's alleged failure to come to work at a set time on Saturdays, absent any indication that Bowling's practice violated a company rule or directive, does not compare to plaintiff's admitted violation of a company rule following a warning that his employment would be terminated if he failed to show up for work on a specific day. Plaintiff's allegation that Saylor would cause trouble

at work due to a drinking problem and would then leave work, absent any specific allegations as to the nature of Saylor's alleged infractions and the approximate dates and frequencies of the infractions, likewise does not permit a finding that Saylor committed infractions of comparable seriousness to the violation committed by plaintiff.  Finally, plaintiff's allegation that his wife was denied a promotion purportedly because of her age does not support a finding that plaintiff's employment was terminated some time later based on the same motivation. The "fragile, old lady comment" is simply too far-removed from plaintiff's employment termination to support a finding of age bias against plaintiff and too isolated to show that defendant held stereotypical beliefs about the capabilities of older workers in general.

Assuming plaintiff has come forward with sufficient evidence to establish a prima facie case, defendant is nonetheless entitled to summary judgment because the record does not contain evidence which would permit a reasonable trier-of-fact to make an inference of pretext. Plaintiff does not contend that the proffered reason for his discharge is factually false. Plaintiff admits that he violated Richard Reilly's directive by not reporting for work on December 22, 2000, and that he violated the company's policies by not calling in his absence. While plaintiff asserts that he believes termination was too harsh a punishment for the infraction, there is no basis in the record for a reasonable trier-of-fact to infer that failing to report for work and to call in the absence after specifically being warned that failure to do so would result in termination was an insufficient basis for plaintiff's discharge. In fact, plaintiff testified at his deposition that he expected to be fired for the violation in light of Reilly's call to him at home on the evening of December 21. (Depo., p. 132).

Finally, plaintiff has not produced evidence which would permit an inference that

defendant's articulated nondiscriminatory reason did not actually motivate the discharge. Plaintiff alleges that the proffered reason is sheer pretext because at the time of the termination, Reilly already knew that plaintiff was on his way to work as ordered and that the injury to plaintiff's wife had prevented him from coming in to work. The problem with plaintiff's argument is that even if one accepts as true plaintiff's explanation for why he failed to report to work and to call in his absence, defendant was entitled to make a business judgment that plaintiff's explanation was not a valid justification for his infraction and that plaintiff's conduct warranted termination of his employment. Moreover, defendant was entitled to disbelieve and to reject plaintiff's explanation altogether, particularly in view of the apparent absence of any objective verifying evidence. Whether defendant chose to disbelieve plaintiff or to reject his excuse for violating Reilly's directive and company policy as insufficient, there is no basis for determining that defendant's business judgment, when considered in the context of the other evidence of record, was so ridden with error that defendant could not honestly have relied upon it, much less that defendant's judgment was unreasonable. Because the record is devoid of any evidence which supports an inference that defendant's proffered reason for plaintiff's discharge was a pretext for age discrimination, defendant is entitled to summary judgment on plaintiff's age discrimination claim.

### B. Slander

Plaintiff premises his slander claim on an allegation that when he applied for a position at QPC and the office manager, Kevin Ireland, contacted defendant for a job reference, defendant disclosed only that plaintiff "was ineligible for rehire" and gave no positive information about plaintiff's twenty-five years of service. Plaintiff notes that Ireland has averred that the information was a factor in QPC's decision not to employ plaintiff. Plaintiff claims that

defendant's statement of intent not to rehire him is not protected by O.R.C. § 4113.71 because the statement provides no information regarding plaintiff's job performance and therefore falls outside the protection of the statute. Plaintiff alleges that if the statute does apply, the exceptions to the protections of the statute provided therein likewise apply.

Plaintiff's allegations do not support a slander claim. First, plaintiff does not allege that the information disclosed was false, and plaintiff cannot show that defendant committed slander by failing to disclose any additional information. Second, defendant is qualifiedly immune from liability under O.R.C. § 4113.71 because it disclosed information to QPC in response to a request by a prospective employer for information pertaining to plaintiff's job performance. The evidence does not permit an inference that defendant knew the information it disclosed was false, and the evidence does not support a finding that the disclosure constitutes an unlawful discriminatory practice. Defendant is therefore entitled to summary judgment on plaintiff's slander claim.

### C. Intentional infliction of emotional distress

The evidence does not permit a finding that defendant's conduct in terminating plaintiff's employment was extreme and outrageous or that plaintiff suffered mental anguish that "no reasonable man could be expected to endure." Defendant is therefore entitled to summary judgment on plaintiff's claim for intentional infliction of emotional distress.

### VI. Conclusion

In accordance with the foregoing, defendant's motion for summary judgment is **GRANTED.** Defendant is entitled to judgment in its favor on all of plaintiff's claims against it. This case is hereby **DISMISSED** and is **TERMINATED** on the docket of this Court at plaintiff's cost.

**IT IS SO ORDERED.**

                                                  s/ Herman J. Weber
                                                  HERMAN J. WEBER
                      SENIOR JUDGE, UNITED STATES DISTRICT COURT

J:\HJWA\01-603msj.wpd